and Salas & Co. L.C. Mr. Salas is with me in the courtroom this morning at counsel table. Your Honors, I'd like to reserve three minutes for rebuttal, if I might. Try to keep track of your time. Thank you. Thank you.  Your Honors, but in light of Greenfield's aggressive collection activities in Louisiana, we ask that the court proceed as expeditiously as it can to issue an opinion. I do need to make one correction of fact. In our opening brief at pages five and six, we stated that appellants, plural, removed the case from state court to federal court. That was incorrect. Salas & Co. initially removed. Mr. Salas later consented to remove. And that makes a difference because? That may make a difference because of Beecher, the argument that the opponents have made relative to Beecher. There is an old Sherlock Holmes story, the key clue of which is the dog that didn't bark. In this case, Your Honors, the dog that did not bark can be found in the court docket. The court's decision in Beecher v. Wallace established that any prior state court process becomes null and void upon removal. And that's because of the well-settled rule that federal procedure governs after removal. Thus, after removal, a plaintiff must comply with the requirements of Federal Rule Civil Procedure 4 as to any defendant not served before removal. The undisputed fact in this case is Greenfield did not personally serve Mr. Salas with state court process until after removal. They served him October 9, 2013, well after removal. The state court process served on Mr. Salas personally was therefore null and void. The trial court ignored Beecher and thus was in error when it denied his motion to dismiss. So then we go to the next question, was Salas and company served prior to removal? The complaint was the same, right? Beg your pardon? The complaint was the same. The complaint was the same. The summons was the state court summons. And the state court – I understand that. But the complaint in state court became the complaint in federal court. Yes, Your Honor. Okay. And the trial court initially granted – I think this is important – the trial court initially granted the motion to dismiss by Salas and company because the state court process was defective. That is to say they did not serve it properly. The trial court agreed with that. But then the trial court reconsidered. And what was the basis for that reconsideration? The trial court based its reconsideration on a conclusion that the post-removal service of the state court process on Mr. Salas, on October 9, 2013, cured the defective service on Salas and company. Now, Greenfield distinguished Beecher on one basis. They asserted that Mr. Salas had notice of the state court action through the defective service on Salas and company. But their argument is that two wrongs make a right. Two defective service of process somehow are transformed into an effective service of process. It's a circular argument, Your Honors, and I'd ask that you reject it. Counsel, before you get too much into your time, I'd appreciate your addressing the question that we asked the parties to address at oral argument, which is whether the fee award was properly made under Washington law as distinct from under federal law. I'm not sure I quite heard your question, President. We issued an order on April 2nd asking the parties to discuss how Johnson v. Grumman affects the question whether there was a proper fee award under Washington statutes. Okay, the fee award. I thought you were referring to Fiore, F-I-O-R-E. Oh, I'm sorry. Need to speak up. I appreciate the court having alerted us to Johnson. Neither party, I think, cited it. The arbitration clause in Johnson provided that arbitration was to be conducted and subject to enforcement pursuant to California law. Here the arbitration clause provides except as otherwise set forth herein regarding, let me reemphasize that, except as otherwise set forth herein regarding civil and evidentiary rules, this entire agreement shall in all respects be interpreted, construed, et cetera, under the laws of the state of Washington. Two sentences earlier in the same arbitration paragraph, Your Honor, it provides each party shall bear its own legal fees and costs. Now that is, quote, otherwise set forth regarding civil rules, close quote. So I think that pretty much forecloses that. We made that argument in our briefs. It also doesn't say anything about enforcement of an award, and that, of course, differs from the clause in Johnson. Now remember, of course, this is Greenfield's foreign contract. They do not get the benefit of any ambiguity. Your Honor, I really don't want to short-circuit this, and I don't want to push back too hard. I understand you want me to move on. Under Beecher, we have the first situation where the defendant was not served. That's Mr. Sallis. We have the second situation, number two in Beecher, in which Sallis and company was served, but the service was defective. Under that situation, under Washington law, both Haberman v. Washington Public Power Supply, the WHOOPS case, as everybody calls it, says that, Morris v. Palouse River says that, the proper procedure is very simple. Greenfield knew they had a problem. We told them every step of the way, you've got a problem. They had an easy procedure, which Beecher itself points out, is to have proper service issued by the federal court and then serve. And they didn't do that. They had ample opportunity. There's no reason for this court to resile from Beecher. Let me concede a point, Your Honor, that the parties I don't think adequately brief, our side or their side. It is true that a party to a commercial contract can contractually consent to jurisdiction, regardless of whether minimum contacts exist. Mr. Sallis was never a party, a signatory, if you will, to these contracts. That raises a separate question, Your Honor, a question which, with Your Honor, Judge Graber, is undoubtedly very familiar. Does a signatory's consent to jurisdiction in a commercial contract bind a non-signatory to that jurisdiction without any personal contacts? And that's where Walden v. Thorey comes in, Your Honor. That's why I didn't quite understand your question previously. But, Your Honors, Ninth Circuit decisions in Holland America Line versus Wärtsilä and Axiom Foods versus Acerchem International, I have no idea how to pronounce Acerchem, concluded that non-signatories had not waived their objections to personal jurisdiction, regardless of whether the signatory had done so. Now, this is not a situation in which we're talking about whether an arbitration clause is enforceable against a non-signatory based upon privity. This is jurisdiction. And did the court have jurisdiction over Mr. Sallis personally when he's not a signatory of the contract? Where he has not consented to jurisdiction. He had no contacts. Let me give you an example. I want to give you a hypothetical. Let's assume an attorney at a large firm, as opposed to a solo practitioner, say Bogle & Gates. And I use that firm because it no longer exists. It went out of business. Judge Kuhnhauer would probably be hurt to hear me say that. But, Bogle & Gates, and you're a partner at Bogle & Gates, and Bogle & Gates retains an expert witness. We'll call this expert. Let me ask you, though. Was Mr. Sallis the only principal of Sallis & Company? Yes. So it would be as if there were Bogle and there were one lawyer there. Does it make a difference? Well, I guess that's the question. On what basis are you going to disregard the corporate entity? Does a big firm have some sort of advantage that a small firm does not have? Does a two-attorney firm? You know, where are you going to draw the line, Your Honor? So let me just finish the hypothetical. Bogle & Gates hires a Louisiana oil spill expert on behalf of the firm's client. The oil spill expert's retainer agreement appeared as follows. Client, Bogle & Gates, PLLC. Sallis & Company, LC. By big lawyer as principal, Camilo Sallis III as principal. That's exactly what this contract says. Exactly. And included a consent to jurisdiction in Louisiana by Bogle & Gates. Let's say at the demise of Bogle & Gates, it did not pay oil spill expert. Or it went bankrupt. It did not pay them. Within jurisdictional limitations, would the Louisiana courts be able to exercise personal jurisdiction over big lawyer, personally, who had never set foot in Louisiana, never done business in Louisiana, and had no contacts whatsoever with Louisiana, except for the fact that she had signed the contract as the representative of Bogle & Gates and supervised the litigation. Counsel, did you wish to save rebuttal time because you're down below three minutes at this point? Oh, Your Honor, I'm accustomed to other courts where they actually adjust, so I apologize. I do want to save rebuttal time. One more point on interest, and I'll be done with two minutes left. I think it should be clear by now that the trial court entered an erroneous interest award for post-judgment interest. And it's true that, and I want to address obliquely counsel's argument, oh, hey, you should have raised this in the trial court. And it's true. We didn't do that. We preserved it, however, on appeal in the way that the Fidelity Federal Bank case said you should do. And we also filed the 62.1 motion, which was a new experience for me. Now, I can only attribute that to ignorance on my part and on the part of Mr. Salas. We were not familiar with the application of 28 U.S. Code 1961 to an arbitration. But let me say, if we were ignorant, we were in good company. Rule 3.3 of the Rules of Professional Conduct required that opposing counsel disclose to the district court that they were controlling legal authority directly adverse to the client's position, even if not raised by the opposition. Greenfield's counsel had an obligation to have pointed that out to the court. They did not. And I ought to also expect a very experienced trial judge, and as we all know, Judge Dill, he's a very, very good judge, would have expected him not to enter a judgment on this issue if he knew that it was legally erroneous. Under the Fidelity Federal Bank case, Your Honor, this court can correct that error. We ask that you do so. Thank you so much. Thank you, counsel. We'll hear from the appellee. May it please the court. My name is Tom Peterson, and it is my privilege to represent Greenfield Advisors. With me again. There's a button right below where your hands are that would raise the podium to where those mics are. Counsel warned me he would lower the podium before I stepped up. Thank you. And with me at counsel table is Eleanor Walsted, an attorney in my office. Before I follow the counsel into the weed on some of these arguments, I would like to step back and take a look at the big picture here. In this case, Attorney Salas purchased services and reports from a Washington State consultant, received those services, used them in his court filings, and did not pay for them. If this case is dismissed, he will get a windfall and Greenfield will be severely damaged. Now, as we know, this is an arbitration case, and courts are very deferential with arbitration decisions and the scope of review is exceedingly narrow. Who asked for arbitration? Well, initially, we sought arbitration, and that's an important point that I wanted to point out here. The first thing that we did was we sent a letter to Mr. Salas by certified mail, and that letter was received and signed by Daisy. There was no response, so then we initiated an arbitration with the Washington Arbitration and Mediation Service and attempted to serve Mr. Salas in Louisiana, Florida, and Texas. And our service processor even spoke with Mr. Salas on the phone, but was not ever able to reach him. Consequently, we determined that he was, A, avoiding service of process, and B, did not want to arbitrate. So we started an action. A shorter answer to the question I just asked. Thank you. Mr. Salas personally removed the case to federal district court. The question was, who asked for arbitration? And then Mr. Salas moved to compel arbitration. Thank you. But I do want the court to know that we... Sometimes all we're asking is what time it is. We don't need to know how to build a clock. I understand. Go ahead. But I do want the court to understand that we did seek arbitration initially, and this has been a game of cat and mouse for six years. The professional service agreement says that bills unpaid after 30 days will accrue interest at the rate of 18 percent per annum. It does not contain an attorney's fees clause. Before commencing, I mentioned this, the demand letter, we attempted to do arbitration. So, counsel, let me jump to that attorney fees issue. What... Is it incorrect for the court to have used Washington State rules for fees? No. Why? And under the Johnson v. Grimacorp case, the court looked at whether the agreement between the parties made and expressed a clear intent to apply Washington law or to apply the state law. And we believe that is, in fact, what happened in this case under these agreements. And there are multiple agreements. Whoever the parties are to this contract, it's clear that they agreed to arbitration. And as a general matter, that they agreed to the application of Washington law. It's not so clear whether they agreed to the application of Washington law on arbitration. So let me address that, Your Honor. The contract, the professional service agreements, contains two choice of law provisions. There's a general one in Section 18 that applies to the entire contract. And then in Section 10, there is the arbitration clause itself. And in that clause, it says, the procedure for the arbitration shall be governed by Washington's King County Superior Court civil rules and the rules of evidence. Then it says, in the arbitration clause, separately, that this agreement shall, in all respects, be interpreted, construed, and governed by the laws of the state of Washington. It also says each party shall bear its own legal fees and costs. Correct. That's correct. And are you addressing now the Grumman issue about, does that question relate to? Well, it wasn't really a question. It was just you sort of skipped over that between the two things. Yes, I did. I didn't think it was relevant. But if you think it is, I will address it. No, go ahead. The point that I want to make here is that this clause specifically addresses procedural and substantive laws. And it attempts, in a very broad way, to state that all aspects of this arbitration will be governed by Washington law. And that is distinguishable from other cases that have been cited in this case, where there's just a simple choice of law provision. Here, there is that simple choice of law provision, but there's an additional arbitration provision that is very specific about both substantive and procedural law. And for that reason, we believe that Washington law was the choice of law. Regarding jurisdiction, personal jurisdiction, yes, Salas did consent to personal jurisdiction in Washington. The arbitration agreement specifies that the hearing must take place in Washington. On April 6th, Salas' attorney signed a letter agreement on behalf of Mr. Salas and Salas & Co. L.C. agreeing to arbitrate with Judge Steve Scott here in Washington. The letter agreement specified that the ward would be certified by the Western District of Washington in this lawsuit. Both Mr. Salas and Salas & LLC were represented by Mr. Wade, and both were specifically identified in that letter. It's Exhibit ER 304 to 306. And they consented to Washington jurisdiction. The majority of federal courts have held that where a party has agreed to arbitrate in a particular forum, only the district court in that forum has jurisdiction to confirm the award. Furthermore, an agreement to arbitrate in a state amounts to a consent to jurisdiction in that state. And we cited the case Union Mutual Stock Life Insurance, a First Circuit case, which relies upon Moore's federal practice for that proposition. So there, Mr. Salas and Salas & Co. in that letter and in the agreement consented to jurisdiction in Washington. And the only place then to confirm the award in that case is the district court for Washington. In any event, the district court had specific personal jurisdiction over Salas and his LLC. Washington's long-arm statute identifies three requirements. Salas, number one, Mr. Salas transacted business in Washington State. Number two, Greenfield's claims arise out of that Washington State transaction. And number three, jurisdiction over Salas does not offend traditional notions of fair play and substantial justice. Just, we've, I think, briefed this issue thoroughly. I want to just emphasize the contacts itself and then I'll move on. Salas was the one who contacted Greenfield initially. Secondly, Salas signed contracts that specifically identified or specifically agreed to arbitration in Washington and the application of Washington law. Therefore, he's relying on Washington law to enforce the contract if Greenfield breaches. The initial two projects expanded ultimately into 21 projects over an 18-month period. There were numerous phone calls, e-mails, and other communications between Greenfield employees and Mr. Salas. And it was Mr. Salas in every single instance. There was no one else that communicated with Greenfield or its employees. 92% of the work was done by Greenfield employees in Washington State. Checks were sent by Mr. Salas to Greenfield in Washington and Salas made multiple promises to pay Greenfield, in some cases even out of his own funds. Now, counsel raised the question about proper service. Salas and Co. served Daisy, who is the secretary or office assistant to Salas, and Salas is the head of the company and the registered agent for the company and the only person in the company. So under RCW 4.28080.9, that is satisfactory service on Salas and Co. L.C., service on a secretary in the office of the agent. And the court also found that it was proper service under Section 10 and Section 15, but there's no question it's service under Section 9 on Salas and Co. L.C. Now, then Greenfield later personally served Mr. Salas personally. This is all prior to removal? No. That second service was after removal. And that is the nugget of their argument, is that we serve the old complaint and the old Washington State summons on Mr. Salas, but the case had already been removed to federal district court. And so the argument that he's making based on the Beecher v. Wallace case is that, oh no, you should have gone to district court and had them issue a summons that said U.S. district court on it and had the new number. But the case that he cites, Beecher v. Wallace, recites three different scenarios, the first of which is where there are multiple defendants in a case, one of the defendants is served by the state court action, and the other one has no knowledge at all about the state court action. And it makes sense that if there's a removal, and then later that other defendant is served and has no knowledge of the case, that there might be a due process question. And that's what the court framed it as, a due process question. But Beecher v. Wallace then recites two other scenarios where it would not apply. And those are the scenarios that apply in this case, because Mr. Salas had actual notice of this federal court proceeding, because he was the one that removed it. I was just going to, oh, it's right here. This is ER 355, the notice of removal. Mr. Wade misspoke. It was defendant Camillo Salas that removed this case to federal district court. It was not Salas and Co. L.C. And he stated in his declaration supporting the removal that he received notice, on whatever the date was, that Daisy was served with notice. So due process was met here. He had notice, and he was properly served. There's an argument about whether Salas was personally bound by the award. This is an arbitrator question. This is a question that was submitted to the arbitrator, and it is beyond the purview of this Court, I believe, except where under the FAA or Washington statute regarding arbitration, the arbitrator exceeded his authority. And there's no claim. Well, what if the arbitrator says nothing about it, whether he's bound personally? The arbitrator did. What did he say? He entered an award against both Mr. Salas and Salas and Co. L.C., and they were both specifically identified. Furthermore ---- So that's sufficient to indicate that he decided this question of whether or not Salas is personally liable? Yes, it is. Because the whole record is not available. In fact, the letter that he wrote is not appealable. So the only record that this Court is able to look at is the actual decision, which does specifically identify both parties. And it was also an issue that was fully argued and briefed at the arbitration level. And some of the evidence that the arbitrator considered were the professional services agreement, which identifies in the top left-hand corner, the client is Camilo K. Salas. Mr. Salas signed each professional service agreement, although he did note that he was the principal of Salas and Co. But then there were some 20 or so supplemental contracts, letters that were all addressed to Mr. Salas that he assigned personally. These were all exhibits in the arbitration that the Court considered. One hypothetical question to follow. If the panel were to conclude that the determination of fees should be made pursuant to the FAA and not Washington law, does it not follow that the interest should be calculated at the federal rate and not the contract rate? There is a similarity between the two arguments, between the interest and the attorney's fees issue. And part of it does turn on whether the contract specified that Washington law would apply versus whether federal law would apply. And our position is that it... I know what your position is. You well stated it. But if the panel were to conclude that the fee award should have been pursuant to the Federal Arbitration Act, does it not follow that interest calculation should be made at the federal rate, not the contract rate? If you disagree with that, tell us why. Okay. Well, as far as the attorney's fees issue is concerned, there is a preemption by federal law, generally speaking, under the FAA. But there is really no conflict between the FAA and state law. The state law says, gives the court the discretion to award attorney's fees. And the FAA is simply silent on it. It doesn't prohibit an award of attorney's fees. And I understand the statute, the common law, is that in the absence of such a statute or contract, there are no attorney's fees. So I believe that there is no conflict. But I have to go back to my argument about whether there was a clear intent to apply Washington state law. And I believe if you analyze these two choice of law clauses, there are two of them, and particularly the arbitration clause, that it is clear that there was an intent to apply Washington law. And on that basis, this court should affirm entirely the district court's decision. Thank you, Your Honors. Thank you, Mr. Peterson. Mr. Wade, you have one minute. I don't think I'll need more than that. I'll respond as briefly and directly as I can. First of all, I believe that counsel is mistaken. The arbitration award did not identify any particular person. Goodness knows we asked. We raised that issue time and time again in front of the arbitrator, in front of Judge Zille. Nobody ever gave us any rationale. Nobody ever said, yeah, you're both liable, other than the fact that Judge Zille entered a judgment against both. The arbitrator did not. Second, counsel started by saying, oh, gee, if you were to dismiss this case on jurisdictional grounds, the defendant would receive a windfall. That's not true. The remedy was that they should have filed this lawsuit in the proper jurisdiction to begin with. They had several years to do that, and they chose not to. That was a risk that they chose to take. And I don't know if the statute of limitations has run or not, but they may still have that alternative. But that's what happens. Counsel, you've exceeded your time. Thank you. Thank you, counsel. We appreciate very much the arguments of both counsel. They've been very helpful.
judges: Hawkins, Tashima, Graber